OPINION OF THE COURT
Julian F. Kubiniec, J.
Petitioners-complainants, N.Y.P.I.R.G. — Citizen’s Alliance, Kenneth Sherman and Alfred T. Coppola, by order to show cause: seek an order pursuant to Election Law article 16 declaring valid and legally sufficient the stadium referendum petition as filed with the Buffalo City Clerk between August 22 and August 26, 1985; and pursuant to CPLR article 78 declaring the determination of the respondent-defendant, Erie County Board of Elections, and the Buffalo Common Council’s *449 action in rejecting said stadium petitions, to be in violation of lawful procedure, affected by an error of law, arbitrary and capricious and an abuse of discretion; and further, pursuant to CPLR 3017 (b), seek judgment declaring the stadium referendum petitions to be in all respects valid and directing the respondent-defendant, City of Buffalo, to conduct a referendum election and, lastly, seek to preliminarily restrain the City from the issuance and sale of serial bonds incidental to the construction of an outdoor baseball stadium.
At the outset, we note that petitioners’ request that the within petition complaint also be deemed their reply and counterclaim to the prior petition of Michal J. Flynn, which petition also sought an order pursuant to Election Law article 16, is now moot in light of Mr. Flynn’s counsel’s withdrawal, at oral argument, of the prior petition and his election to rely upon his motion to dismiss the petition herein.
In any event, this court finds that neither petitioner has standing under Election Law article 16 to seek a review of the validity or invalidity of the filed referendum petitions. Petitioners’ contention that Buffalo City Charter § 419 incorporates by reference the Election Law so as to supersede the substantive and procedural requirements of Buffalo City Charter § 413-a, which prescribes the content of petitions for repeal, is to misread the plain meaning of section 419. This section applies only to the conduct of the "special elections so ordered by the [common] council, and the submission of questions at a general or special election” (Buffalo City Charter § 419; emphasis added). This ordering of a special election or "advisory referendum” by the Common Council is occasioned only after the presentation of a valid and legally sufficient referendum petition as so certified by the Commissioners of the Erie County Board of Elections, and only after reconsideration by the Common Council fails to repeal the initial resolution (Buffalo City Charter § 412-a). As so limited, the Election Law is unavailable to these petitioners who now seek to challenge certain provisions of the Buffalo City Charter which allow for the petitioning to repeal a Common Council resolution creating a bonded indebtedness and which provisions the petitioners maintain are in conflict with the Election Law. (See also, Election Law § 1-102, rendering itself inapplicable when inconsistent with any other law unless so specified to apply notwithstanding any other provisions of law, and Matter of La Cagnina v City of Schenectady, 70 AD2d 761 [1979].)
This court’s review is, therefore, directed only to the conten *450 tion of the petitioners herein that the Board of Elections certification which invalidated all signatures on the referendum petitions for the failure of a proper "acknowledgment” and by implication, the action of the Common Council in voting to receive and file this certification, is in error of law or arbitrary and capricious (CPLR 7803 [3]).
Admittedly, all of the referendum petitions submitted herein comply with the form provided in Election Law § 6-132 (3), in that they contain a statement signed by either a notary public or a commissioner of deeds which would otherwise be legally sufficient verification of signatures appearing on a candidate’s designating petitions, but do not contain an "acknowledgment” of each signature appearing on the face of the petition. It is for this reason that the Board of Elections certified that the referendum petitions contained no valid signatures.
The Board of Elections was charged with the duty of examining and certifying said petitions under Buffalo City Charter § 413-a which mandated that "[e]ach signer shall acknowledge the execution of the petition before a notary public or commissioner of deeds” and the "commissioners of elections * * * shall immediately examine the same and the signatures and acknowledgments attached thereto” and certify "the number, if any, who did not properly acknowledge execution” and the "electors whose signatures appear to be properly acknowledged”. The language thus employed in this section and Buffalo City Charter § 412-a requiring "acknowledgment” of execution of the petition invoked a special and legally recognized and defined term commonly employed in executing various documents, especially those to be filed in a public office.
The term "acknowledge” and "acknowledgment” is defined in the General Construction Law §§ 10 and 11 and the term "acknowledged” is defined in SCPA 103 and extensively referred to and employed in the Real Property Law § 298 et seg. A cursory review of the various State statutes reveals that innumerable documents and procedures require "acknowledgment” of execution thereby giving this term a long history of accepted meaning, quite distinct from those documents or procedures which are required only to be verified or authenticated. In refusing to certify or validate the referendum petitions because they were verified pursuant to the Election Law as if they were designating petitions, this court finds the Board of Elections properly and lawfully carried out its duty *451 as required by Buffalo City Charter § 413-a, in that it recognized and understood this section to require the petitions to be "acknowledged” as that term is legally defined and understood.
We note in passing that this distinction can be found in the Election Law itself which requires the "acknowledgment” of a candidate’s signature in the more important concern of the filing of his or her certificate of acceptance or declination of a designation or nomination for election to a public office (Election Law § 6-146 [1]).
A further issue requiring consideration is the authority for and legality of the Buffalo City Charter’s requirement that petitions for a permissive referendum of a Common Council’s resolution creating a City bond debt be executed and acknowledged as required by sections 412-a and 413-a.
The State Legislature, in order to implement the Bill of Rights, granted to local governments under NY Constitution article XII (now art IX), enacted in 1924 the City Home Rule Law (L 1924, ch 363). This law directed that petitions filed by city electors for a permissive referendum shall be authenticated in the same manner as designating petitions under the Election Law.
Thereafter, in compliance with the procedures authorized in the City Home Rule Law, the City of Buffalo and its electorate adopted the present Buffalo City Charter in a special election in 1927. This charter, pursuant to article 23, sections 411, 412 and 413, granted its citizens the right to a permissive referendum on Common Council resolutions creating bonded indebtedness. Sections 412 and 413 (the predecessors of present §§ 412-a and 413-a) required that signatures of electors on the petitions shall be duly signed and acknowledged before a notary public or commissioner of deeds. The original Buffalo City Charter thus appeared to conflict with the general State law on the procedure to be employed on permissive referendum petitions.
Subsequently, the city, in order to be legally authorized to make temporary loans in anticipation of the sale of bonds and to exempt same from the 30-day waiting period and to further amend the Buffalo City Charter provision on the transfer of funds, caused the State Legislature to enact Laws of 1930 (ch 614), which was a special State law applicable to the City of Buffalo. Buffalo City Charter § 412, as then amended by the State legislation, not only exempted the issuance of bond *452 anticipation notes from the 30-day waiting period, but adopted in its entirety the language of section 412 as set forth in the original Buffalo City Charter of 1927, which by reference included section 413. Therefore, any conflicts between the Buffalo City Charter and the State City Home Rule Law on the procedure to be employed on petitions for a permissive referendum were resolved by exempting the city from the State mandated procedure in favor of the procedures outlined in Buffalo City Charter §§ 412 and 413.
In 1943 the State of New York made a sweeping revision of its laws by enacting the Local Finance Law (L 1943, ch 711) and by extensively amending the City Home Rule Law (L 1943, ch 710) to conform with the Local Finance Law. Buffalo City Charter § 411 was specifically amended by chapter 710 to permit the Common Council, by resolution, to submit to its electors for determination at a general or special election any question relating to a subject upon which the Council has power to act — except as otherwise provided by the Local Finance Law. The Local Finance Law, in turn, in section 34.00 (b) authorized cities to adopt a local law requiring it to make resolutions authorizing bonded indebtedness either mandatorily or permissively subject to a referendum by its electors and the said section declared that "[s]uch a local law shall prescribe the qualifications of the voters at and the procedure for such a mandatory or permissive referendum”. In compliance with Local Finance Law § 34.00, the Common Council adopted the present Buffalo City Charter §§ 412-a and 413-a (almost identical in form and content to its predecessors, §§ 412 and 413) which are the subject of this controversy.
In 1963, when the State repealed the City Home Rule Law and replaced it with the present Municipal Home Rule Law (L 1963, ch 843), it specifically exempted cities in section 24 (2) (e) from any State law requiring mandatory referendums on city indebtedness resolutions in order to conform with the above-noted options granted to cities in Local Finance Law § 34.00 to determine for themselves whether such referendums shall be mandatory or permissive. Municipal Home Rule Law § 24 (1) provided that, as to those subjects of local law which are subject to a mandatory referendum by State law, they shall be on petitions "signed and authenticated in the manner provided by the election law for the signing and authentication of nominating petitions”. The critical distinction to be here noted is that cities are not directed by State law to submit indebtedness resolutions to a referendum, but are granted the option *453 to decide by local law whether such referendum shall be mandatory or permissive. In so doing, and in either event, Local Finance Law § 34.00, declaring that the local law shall prescribe the qualification of the voters at and the procedure for such mandatory or permissive referendum, excluded by its specific language any application of the Election Law as enunciated in Municipal Home Rule Law § 24 (1). It must be further noted that in enacting the Local Finance Law, the Legislature declared in section 176.00 that, as to the matters contained herein, "this chapter shall constitute the exclusive law on such matters”.
This legislative history indicates that Buffalo City Charter §§ 412-a and 413-a and its predecessors sections 412 and 413, have been validly enacted and authorized by law since at least 1930.
In conjunction with the legislative history of the challenged Buffalo City Charter provisions, this court also notes that the State law as it pertains to referendums on debt obligation resolutions in counties, towns, villages, school districts, fire districts and other district corporations, be they mandatory or permissive, permits the electors in these various municipalities and districts to file petitions signed and authenticated pursuant to the Election Law in the same manner as designating petitions. The reason for the exception in Local Finance Law § 34.00, permitting cities themselves to prescribe the qualifications of its voters and the procedure to be employed in such a referendum, appears obvious. At the time the Local Finance Law was enacted (1943) the cities of this State, in contrast to towns and villages, were highly populated areas. This factor, along with the long-standing legal tradition in New York that no city is required by State law to mandatorily submit bond indebtedness resolutions to voter referendum unless it so chooses by local ordinance, is sufficient reason to permit each city to adopt those procedures that its legislators determine are best calculated to eliminate fraud and lessen the incidence of wrongdoing by those circulating and signing referendum petitions.
As the calling of a special election through the format of a referendum petition preempts the representative form of government and oftentimes necessitating considerable polling costs, it is of no small import and is, therefore, properly subject to those legislative constraints that each municipality deems necessary. (See, Howlette v City of Richmond, Va., 580 F2d 704 [1978].) While it may well be that population shifts *454 over the last 42 years have lessened the impact of earlier considerations, that determination also belongs to the legislative process.
In the context of the foregoing considerations, petitioners’ contention that to require each petition circulator to "acknowledge” that he personally knows (or, we presume, received proof of identity) every individual signing the referendum petition, effectively renders impossible the referendum process as adequate signatures could not be gathered within the required 30-day period following enactment of the resolution and is, thus, unfairly burdensome is without legal foundation.
This court is unable to find that either the Erie County Board of Elections or the City of Buffalo, Common Council, has acted in error of law, or arbitrarily and capriciously, or in abuse of their discretion. Accordingly, the petition complaint is denied.